1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA TAYLOR,<br><br>            Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | 1:06-cv-00957-SMS<br><br>DECISION AND ORDER DENYING<br>PLAINTIFF'S SOCIAL SECURITY<br>COMPLAINT (DOC. 1)<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT FOR DEFENDANT MICHAEL J.<br>ASTRUE, COMMISSIONER OF SOCIAL<br>SECURITY, AND AGAINST PLAINTIFF<br>LINDA TAYLOR |

        Plaintiff is represented by counsel and is proceeding in

forma pauperis with an action seeking judicial review of a final

decision of the Commissioner of Social Security (Commissioner)

denying Plaintiff's application for disabled widows insurance

benefits and supplemental security income (SSI) benefits under

Titles II and XVI of the Social Security Act (Act). Pursuant to

28 U.S.C. § 636(c)(1), the parties have consented to the

jurisdiction of the Magistrate Judge to conduct all proceedings

in this matter, including ordering the entry of final judgment.[1]

The matter is currently before the Court on the parties' briefs,

---

[1] On November 30, 2006, the Honorable Anthony W. Ishii, District Judge, ordered the case reassigned to the undersigned Magistrate Judge for all purposes.

1

which have been submitted without oral argument to the Honorable
Sandra M. Snyder, United States Magistrate Judge.

I. Procedural History

Plaintiff filed an application for benefits in June 2003,
with a protective filing date of January 24, 2003, alleging that
she was unable to work as of January 1999 due to fibromyalgia,
chronic Hepatitis C, anxiety, and "TIA's." (A.R. 81-83, 446-49.)[2]
After initial denial and denial after reconsideration, a hearing
was held on July 18, 2005, before Administrative Law Judge (ALJ)
James P. Berry at which Plaintiff, represented by counsel,
testified. (A.R. 14, 60-64, 66-71, 452-53.) The ALJ issued a
decision on August 15, 2005, concluding that Plaintiff was not
disabled. After the Appeals Council's denial of Plaintiff's
request for reconsideration on May 26, 2006, Plaintiff filed the
instant action for review on July 21, 2006. (A.R. 6-9.) After
briefs were filed by both parties, briefing concluded with the
filing of Plaintiff's reply brief on March 27, 2007.

II. Standard and Scope of Review

Congress has provided a limited scope of judicial review of
the Commissioner's decision to deny benefits under the Act. In
reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner
is supported by substantial evidence. 42 U.S.C. § 405(g).
Substantial evidence means "more than a mere scintilla,"
Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

[2] Plaintiff had previously filed an application which was denied in May 2002; the ALJ concluded that no presumption of continuing disability applied because Plaintiff had presented a new mental impairment. (A.R. 15.)

1  (9th Cir. 1975). It is "such relevant evidence as a reasonable

2  mind might accept as adequate to support a conclusion."

3  Richardson, 402 U.S. at 401. The Court must consider the record

4  as a whole, weighing both the evidence that supports and the

5  evidence that detracts from the Commissioner's conclusion; it may

6  not simply isolate a portion of evidence that supports the

7  decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

8  2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It

9  is immaterial that the evidence would support a finding contrary

10 to that reached by the Commissioner; the determination of the

11 Commissioner as to a factual matter will stand if supported by

12 substantial evidence because it is the Commissioner's job, and

13 not the Court's, to resolve conflicts in the evidence. Sorenson

14 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

15     In weighing the evidence and making findings, the

16 Commissioner must apply the proper legal standards. Burkhart v.

17 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

18 review the whole record and uphold the Commissioner's

19 determination that the claimant is not disabled if the

20 Commissioner applied the proper legal standards, and if the

21 Commissioner's findings are supported by substantial evidence.

22 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

23 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

24 the Court concludes that the ALJ did not use the proper legal

25 standard, the matter will be remanded to permit application of

26 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

27 Cir. 1987).

28 ////

1        III. _Disability_

2        In order to qualify for benefits, a claimant must establish

3   that she is unable to engage in substantial gainful activity due

4   to a medically determinable physical or mental impairment which

5   has lasted or can be expected to last for a continuous period of

6   not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

7   claimant must demonstrate a physical or mental impairment of such

8   severity that the claimant is not only unable to do the

9   claimant's previous work, but cannot, considering age, education,

10  and work experience, engage in any other kind of substantial

11  gainful work which exists in the national economy. 42 U.S.C.

12  1382c(a)(3)(B); _Quang Van Han v. Bowen_, 882 F.2d 1453, 1456 (9th

13  Cir. 1989). The burden of establishing a disability is initially

14  on the claimant, who must prove that the claimant is unable to

15  return to his or her former type of work; the burden then shifts

16  to the Commissioner to identify other jobs that the claimant is

17  capable of performing considering the claimant's residual

18  functional capacity, as well as her age, education and last

19  fifteen years of work experience. _Terry v. Sullivan_, 903 F.2d

20  1273, 1275 (9th Cir. 1990).

21       The regulations provide that the ALJ must make specific

22  sequential determinations in the process of evaluating a

23  disability: 1) whether the applicant engaged in substantial

24  gainful activity since the alleged date of the onset of the

25  impairment, 2) whether solely on the basis of the medical

26  evidence the claimed impairment is severe, that is, of a

27  magnitude sufficient to limit significantly the individual's

28  physical or mental ability to do basic work activities; 3)

1  whether solely on the basis of medical evidence the impairment

2  equals or exceeds in severity certain impairments described in

3  Appendix I of the regulations; 4) whether the applicant has

4  sufficient residual functional capacity, defined as what an

5  individual can still do despite limitations, to perform the

6  applicant's past work; and 5) whether on the basis of the

7  applicant's age, education, work experience, and residual

8  functional capacity, the applicant can perform any other gainful

9  and substantial work within the economy.[3] See 20 C.F.R. §

10  416.920.[4]

11     IV. <u>Rejection of Plaintiff's Subjective Complaints</u>

12     Plaintiff argues that the ALJ erred in finding Plaintiff not

13  credible because Drs. Shaw, Lessenger and Young rendered opinions

14  that indicated that Plaintiff had significant limitations;

15  Plaintiff's mother's testimony supported restrictions; and even

16  the ALJ found that Plaintiff had moderate difficulties with

17  social functioning, concentration, persistence, or pace, and one

18  or two episodes of decompensation of extended duration. Further,

19  Plaintiff had sought treatment for her condition, which enhanced

20  her credibility.

21     The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir.

22  2007), summarized the pertinent standards for evaluating the

23  sufficiency of an ALJ's reasoning in rejecting a claimant's

24  subjective complaints:

25        An ALJ is not "required to believe every

26  _____

27     [3] "Disability" for widows and widowers is generally defined the same as for other disability insurance claimants. Soc. Sec. Ruling 91-3p at 2.

28     [4] All references to the Code of Federal Regulations is to the 2005 version unless otherwise stated.

5

allegation of disabling pain" or other non-exertional impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide " 'specific, cogent reasons for the disbelief.' " <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id.</u> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id.</u>

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278 F.3d at 958-59.

The ALJ found that Plaintiff had severe impairments of degenerative disc disease, depressive disorder, and Hepatitis C. (A.R. 15.) There were no findings that Plaintiff was a malingerer. The ALJ referred to Plaintiff's testimony and written statements, and he detailed Plaintiff's complaints, which included being unable to work because of inability to handle stress and physical pain; having pain in the neck, left shoulder, upper back, knee, elbow, and muscles; having episodes of fatigue

1 that might last for two weeks and sometimes caused extreme
2 tiredness that caused her to stay in bed; being functionally
3 limited to lifting five pounds, standing for thirty minutes,
4 sitting for an hour, and walking one block with a need to take
5 rest breaks at least fifty per cent of the time; being without
6 energy, motivation, or interest in things; having suicidal
7 thoughts, difficulty concentrating, and increased fatigue since a
8 prior hearing in May 2002; and experiencing side-effects of
9 medication, impatience, dislike of being around people, and a
10 tendency towards isolation. (A.R. 17-18, 469-76.)

11        The ALJ stated several reasons for discounting Plaintiff's
12 credibility that were clear and convincing and were supported by
13 substantial evidence in the record. The ALJ expressly stated that
14 Plaintiff's claims were not credible to the extent that she was
15 totally precluded from all sustained work activity. The ALJ
16 stated that Plaintiff had received primarily conservative
17 outpatient care with generally good results, was not being
18 considered as a surgical candidate, had not been hospitalized as
19 an inpatient for any impairment, and had not received treatment
20 consistent with a chronic pain disorder such as the use of a TENS
21 unit or attendance at a pain clinic. (A.R. 19.) Plaintiff does
22 not challenge the substantiality of the evidence to support these
23 findings. It is established that an ALJ may rely on the
24 conservative nature of treatment or a lack of treatment in
25 rejecting a claimant's subjective complaint of pain. Johnson v.
26 Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). The ALJ's reasons
27 were clear and convincing.

28        The ALJ also stated that the objective evidence and other

doctors' comments were not consistent with total disability.
(A.R. 18.)

Plaintiff argues that the opinions of Drs. Young, Shaw, and
Lessinger supported Plaintiff's credibility.

Dr. Richard Shaw performed a consultative internal medicine
and rheumatologic examination and evaluation of Plaintiff on
November 12, 2001, apparently at the request of Plaintiff's
attorney in connection with a Worker's Compensation claim. (A.R.
242, 242-71.) Dr. Shaw's findings were largely normal or mild,
including normal chest x-ray, mild degenerative disc disease in
the cervical spine, normal dorsal spine x-rays, possible
impingement in the left shoulder, normal hand and wrist x-rays,
normal lumbar spine except for mild facet joint degenerative
changes, normal knee x-rays except for possible patellar tracking
problem on the left, and normal hip x-rays except for slight
joint space narrowing in the left. (A.R. 251.) Studies showed an
elevated liver function and borderline rheumatoid factor reading
consistent with a possible chronic disease state of the liver; he
characterized them as only mild liver function abnormalities.
(A.R. 252-53.) Dr. Shaw found that Plaintiff had generalized pain
and aching, fatigue, and very minimal sleep disturbance and mood
swings; he found a total of twelve positive tender spots above
and below the waist in three quadrants. All of this was
consistent with fibromyalgia. (A.R. 249, 259.) He concluded that
Plaintiff had developed industrially related generalized
fibromyalgia associated with left sided shoulder impingement
associated with a job injury in 1998. (A.R. 253.) He stated that
she was totally and temporarily disabled but was not permanent

1  and stationary; her treatment would be a multi-disciplinary

2  approach including physical and occupational therapy, medication

3  and injections, exercise, biofeedback, and psychological care and

4  support. (A.R. 260.) Dr. Shaw also concluded that it was very

5  probable that she would not be able to return to her prior

6  occupational activities as described; chronic lifting and

7  carrying of accessories, walking, and stair climbing would be

8  outside the confines of any permanent restrictions. (A.R. 261.)

9      Most of the objective findings of Dr. Shaw were mild. The

10  fact that Plaintiff may have been diagnosed with fibromyalgia did

11  not necessarily undercut the ALJ's reasoning with reference to

12  the extent of Plaintiff's dysfunction or limitation. Further, the

13  limitations alluded to by Dr. Shaw related only to chronic

14  lifting, carrying, walking, and stair climbing as present in

15  Plaintiff's previous employment; they were not such as to

16  preclude any gainful employment.

17      Dr. Frederick Young, who performed a consultative orthopedic

18  evaluation in September 2003, opined that Plaintiff was "felt to

19  have possibility of fibromyalgia" with intervening arthritic

20  changes. (A.R. 331, 330-31.) However, as the ALJ noted (A.R. 17),

21  Dr. Young expressly stated that the findings were "really mild,"

22  and it was felt that Plaintiff should be able to perform desk

23  duty type of activities with limitation of lifting, sitting no

24  more than six hours a day, and no prolonged standing or walking.

25  (A.R. 331.) The doctor's uncertain diagnosis, acknowledgment of

26  the mildness of Plaintiff's symptoms, and ambiguous functional

27  limitations do not undercut the ALJ's characterization of the

28  objective medical evidence.

Dr. Leslie H. Lessenger, Ph.D., performed a psychological exam of Plaintiff on August 19, 2003, to determine eligibility for services of the Department of Social Services. (A.R. 321-25.) Dr. Lessenger diagnosed a major depressive disorder, personality disorder not otherwise specified, and borderline traits, with a global assessment of functioning of 45. Plaintiff functioned in the low average range of intellectual ability and memory except for poor immediate memory; she complained of chronic pain and fatigue and gave a history of disturbed interpersonal relationships and abuse. Her affect was extremely labile, and she was angry and irritable until the evaluation was over. Dr. Lessenger concluded that much of her irritability appeared to be due to feelings of failure in the evaluation process; her focus on her own emotional distress and physical condition was such that her concentration was negatively affected; she was unlikely to function in a work situation where demands were made upon her, and she would not do well interacting with others, given her irritability and negative attitude toward others; and she would have limited ability to deal with changes in a routine work setting due to her emotional instability. Her ability to understand, carry out, and remember simple instructions was limited only by her attitude. (A.R. 324-25.)

Again, although Dr. Lessenger confirmed Plaintiff's report of essentially subjective symptoms of pain and fatigue, the doctor did not make any findings that precluded all work. According to Dr. Lessenger, Plaintiff retained the ability to concentrate but for her own focus on her emotional distress and physical condition; she retained the ability to do simple,

repetitive tasks limited only by her attitude; and the extent of job demands, changes, and the need to interact with others were factors that could militate against successful employment.

Further, to the extent that Dr. Lessenger's opinion was inconsistent with full employment, it was a departure from the most of the remainder of the medical evidence, which the ALJ correctly characterized as inconsistent with total disability.

As the ALJ noted, examinations and studies in 1998 and 1999 revealed neck, arm, back, left leg, and shoulder pain thought to be secondary to disc disease, although there were minimal objective findings, including mild spurring at C5-6 with mild to moderate encroachment upon the right neural foramen but with no significant spinal stenosis, mild disc protrusion at C6-7 and mild narrowing and spurring at C4-5-6, and mild disc herniation at L3-4 and L5-S1; an EMG was normal, and there was no evidence of compression neuropathy, myelopathy, or radiculopathy. (A.R. 148-62, 194, 429-30.) After treatment in 1999 with medication, selective nerve blocks at C5-6 and C6-7, and a trigger point injection in January 2000, she received physical therapy in 2001 and was eligible for vocational rehabilitation. (A.R. 186, 187, 193, 197, 200, 205-06.)

A summary from February 2000 of the recommendations of Dr. Mike Mabry, a neurologist and internist who reviewed Plaintiff's file, revealed the opinion that Plaintiff was not totally temporarily disabled because of a history of normal neurologic exam, normal NCV/EMG, unremarkable imaging, light duty, and

1  evidence of psycho-social overlay. (A.R. 163-64.)[5]

2      Dr. Geoffrey Miller, orthopedic surgeon, performed a

3  qualified medical examination of Plaintiff on June 4, 2001. (A.R.

4  305-19.) Plaintiff reported little in the way of symptomatology;

5  her symptoms came and went, and there was no numbness or

6  weakness. Dr. Miller opined that virtually no physical findings

7  were identified. Dr. Miller found that Plaintiff had full motion

8  of the cervical spine, full range of motion of the shoulders

9  without impingement, no sensory or motor deficits in the hands or

10 upper extremities, negative Phalen's, Tinel's and thumb grind

11 test in the hands, full range of motion of the elbows, hands, and

12 fingers, no joint swelling, full range of motion and no symptoms

13 in the thoracic and lumbar spine, and symmetrical reflexes of the

14 upper and lower extremities. The doctor concluded that Plaintiff

15 did not have any demonstrable orthopedic impairment or disability

16 at the time. (A.R. 319.)

17     Dr. Miller performed a comprehensive re-evaluation for

18 orthopedic surgery of Plaintiff on March 11, 2003, and found that

19 her condition was not materially or substantially different from

20 his last examination. (A.R. 300, 295-301.) At the time, Plaintiff

21 wanted job training. (A.R. 296.) Plaintiff reported more

22 extensive pain than before, including the lumbar spine and left

23 leg, but the pain was seldom experienced. (A.R. 297.) The neck

24 pain and left arm numbness and tingling were just "off and on."

25 (Id.) Dr. Miller's diagnosis was history of nonspecific symptom

26 onset, suggestive of transient ischemic attack, and possibly

27

28         [5]This evidence was not mentioned by the ALJ in his decision.

1  fibromyalgia of nonindustrial origin. (A.R. 298.)

2      On September 26, 2003, state medical consultant Dr. Murray

3  Mitts opined that due to hepatitis, multiple arthralgias, and

4  possible fibromyalgia, Plaintiff retained the medical RFC to lift

5  twenty pounds occasionally and ten pounds frequently, and sit,

6  stand and/or walk for a total of about six hours in an eight-hour

7  work day, with no other limitations. Because Plaintiff's exams

8  had been within normal limits, he adopted a light RFC and not

9  sedentary. (A.R. 373-82.) This assessment was confirmed by state

10  medical consultant Dr. Ernest Wong on February 5, 2004.

11      In 2003 and 2004, Plaintiff obtained treatment at Clinica

12  Sierra Vista for back pain, joint pain in both hands and elbows,

13  and Hepatitis C.

14      With respect to Plaintiff's mental impairment, in February

15  2001, Dr. Eric S. Morgenthaler, Ph.D., interpreted psychological

16  testing of Plaintiff to provide a personality description to Dr.

17  Richard Land. (A.R. 212-16.) The findings were that Plaintiff had

18  average range intellectual capabilities and was functioning

19  without cognitive impairment; she was somatically preoccupied and

20  had many vague and diffuse somatic difficulties but no

21  psychological test signs of acute depression, anxiety, or

22  psychological distress. Plaintiff's personality was characterized

23  by histrionic dynamics that could predispose her to repression,

24  emotional lability, somatic expression of emotional distress,

25  interpersonal sensitivity, and impressionistic reasoning. The

26  doctor cautioned that the results were interpreted without the

27  benefit of a complete history or diagnostic interview and should

28  be considered in conjunction with a comprehensive psychiatric

1 evaluation. (A.R. 215.)[6]

2     In February 2001, Dr. Richard E. Land, psychiatrist,

3 performed a qualified or agreed medical evaluation of Plaintiff

4 with respect to her worker's compensation claim. (A.R. 272-94.)

5 Plaintiff was alert and oriented and had some impairment of

6 recent memory, but pursuant to Dr. Morgenthaler's conclusions on

7 scoring the psychological testing performed by Dr. Land, Dr. Land

8 concluded that Plaintiff had average intellectual capacity and

9 was functioning without cognitive impairment; she was somatically

10 preoccupied, but there was no psychological test sign of acute

11 depression, anxiety, or psychological distress; she had

12 histrionic dynamics in her personality that predisposed her to

13 repression, emotional lability, and somatic expression of

14 emotional distress, interpersonal sensitivity, and

15 impressionistic reasoning. (A.R. 287-88.) Dr. Land concluded that

16 she had a personality disorder not otherwise specified, with only

17 slight impairment of ability to maintain a work pace appropriate

18 to a given work load, perform complex or varied tasks, and accept

19 and carry out responsibility for direction, control, and

20 planning. (A.R. 290-91.) He concluded that psychiatric medical

21 treatment was not applicable or indicated, and Plaintiff was not

22 amenable to such treatment. (A.R. 291-92.)

23     On September 30, 2003, state medical consultant Evangeline

24 Murillo completed a psychiatric review technique in which she

25 concluded that Plaintiff had a major depressive disorder,

26 anxiety, personality disorder not otherwise specified, and

27

28       [6]Again, this evidence is not referred to by the ALJ in the decision under review.

borderline traits; Plaintiff was mildly limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (A.R. 355-68.) With respect to Plaintiff's mental RFC, she concluded that Plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions, and the ability to interact appropriately with the general public; she was capable of simple, routine tasks on a sustained basis, relating to peers and supervisors, adapting to work-like settings and routine changes in the work place, and maintaining attention, concentration, persistence, and pace to complete an eight-hour work day and a forty-hour work week; however, she should avoid the general public. (A.R. 369-72.)

Dr. Murillo's assessment of September 2003 was affirmed by Dr. Glenn Ikawa on February 9, 2004. (A.R. 355.)

The record contains progress notes from Tulare County Mental Health from February 2004 through June 2005. (A.R. 390-413, 434-445.) Plaintiff refused to participate in a program for substance abuse (A.R. 407) or to withdraw from Ativan, Lorazepam, or Klonipin, as recommended by some therapists (A.R. 406, 403); after September 2004, she attended group counseling (A.R. 397-402) as well as individual counseling to deal with anger over a rape she suffered while pregnant in the 1970's that resulted in the death of the child (A.R. 390-96).

The record contains notes from Family Health Care from May through September 2004, reflecting treatment for pain, depression, and Hepatitis C with medication (Zoloft, Ativan, Lorazepam, Effexor, and Vicodin). (A.R. 414-28.) Plaintiff's

15

1  Hepatitis C quantitative titer had improved in June 2004. (A.R.
2  422.)

3      The record also contains progress notes of Plaintiff's
4  treatment at Sequoia Family Medical Center from 1998 through May
5  2002, reflecting primarily treatment for pain with medication
6  (A.R. 217-41); and notes of Plaintiff's treatment at 34th Street
7  Community Health Center from 2003 through 2004, reflecting
8  treatment primarily in the form of medication for Hepatitis C,
9  depression, and pain (A.R. 333-54).

10     The ALJ explained his assessment of the evidence, concluding
11 that the physical findings were mild. (A.R. 18-19.) He expressly
12 addressed Plaintiff's mental impairment, concluding that she was
13 never hospitalized for mental reasons, was receiving individual
14 counseling, and was being treated with psychotropic medication.
15 (Id. p. 19.) He expressly concluded that Plaintiff's ability to
16 understand, remember, and carry out one-step or two-step
17 instructions had not been eroded, and that although Plaintiff
18 would be limited to work requiring only occasional contact with
19 the general public, she had only mild restriction of daily living
20 activities, moderate difficulties in maintaining social
21 functioning and maintaining concentration, persistence, or pace,
22 and one or two episodes of decompensation, each of extended
23 duration. Thus, her mental condition was not shown by credible
24 medical evidence to be a medical condition so severe as to be
25 productive of symptoms that would preclude simple, repetitive
26 light work activity.

27     As previously detailed, substantial evidence supported this
28 conclusion. To the extent that Dr. Lessenger noted some

1 limitations, the limitations were not so specific as to preclude
2 employment entirely, and it was for the ALJ to interpret any
3 ambiguity or uncertainty. To the extent that evidence is
4 inconsistent, conflicting, or ambiguous, it is the responsibility
5 of the ALJ to resolve any conflicts and ambiguity. Morgan v.
6 Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Because the ALJ
7 has authority to interpret ambiguous medical opinions, Matthews
8 v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993), the Court must
9 defer to the ALJ's decision. Further, an ALJ is entitled to draw
10 inferences logically flowing from the evidence. Sample v.
11 Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

12      The Court thus concludes that the ALJ correctly
13 characterized the objective medical evidence of record and
14 concluded that it was inconsistent with Plaintiff's claim of
15 total disability. Although the inconsistency of objective
16 findings with subjective claims may not be the sole reason for
17 rejecting subjective complaints of pain, Light v. Chater, 119
18 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be
19 considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th
20 Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir.
21 1999). Here, the ALJ's reasoning was supported by substantial
22 evidence and was clear and convincing.

23   The ALJ also stated that Plaintiff's history of drug and
24 alcohol abuse had a negative impact on her credibility. (A.R.
25 18.) The record contains substantial evidence supporting a
26 history of drug and alcohol abuse. (A.R. 341 [note dated July 8,
27 2003, from Clinica Sierra Vista noting Plaintiff's telephone
28 report that she was drinking about one gallon a day]; A.R. 416-17

1  [progress note from Family Health Care from the summer of 2004

2  noting that Plaintiff's mental health treatment source was

3  requesting that Plaintiff quit taking "benzos and opiates," and

4  that Plaintiff was angry about adjustment of her medications];

5  322 [report to Dr. Lessenger in August 2003 that Plaintiff drank

6  alcohol heavily in the past but no longer used drugs or alcohol];

7  A.R. 413 [progress note from February 2004 reflecting Plaintiff's

8  report to Tulare County Mental Health that Plaintiff had a

9  relapse in her drinking very heavily in the 1990's]; 409

10 [Plaintiff reported relapsing and drinking four beers in April

11 2004]; A.R. 408 [Plaintiff referred to an arrest in 1970 for

12 drinking and driving].) However, the ALJ gave other reasons for

13 his credibility determination that are independent of Plaintiff's

14 alcohol or drug use or abuse; further, Plaintiff does not

15 specifically challenge this aspect of the ALJ's reasoning. Thus,

16 the Court finds further analysis of this to be unnecessary

17 because the ALJ's other reasons for his credibility determination

18 were independent, clear and convincing, and supported by

19 substantial evidence.

20      V. <u>Rejection of Lay Witness's Testimony</u>

21      Plaintiff argues that the ALJ's reasons for rejecting the

22 testimony of Plaintiff's mother were inadequate and not supported

23 by substantial evidence.

24      The ALJ noted that Plaintiff's mother, Juanita Baldo,

25 testified at the hearing that Plaintiff, who had lived on her

26 property in a separate trailer for one and one-half years and

27 visited her every day, complained of back pain quite often, could

28 not lift or do anything, got upset, threw things, needed to lie

18

down one-third of the day, had anxiety attacks, was paranoid, had
short attention spans, could not handle even an hour of work,
slept a lot, and had problems with stress. (A.R. 18, 484-87.) She
also testified that as far as she knew, Plaintiff had taken
medication prescribed to her, Plaintiff had not drunk alcohol for
many years, and the mother did not know of any drinking by
Plaintiff in the past year. (A.R. 488.)

Lay witnesses constitute other non-medical sources under the
pertinent regulations. 20 C.F.R. §§ 404.1513(d)(4), 16.913(d)(4).
Information from such other sources cannot establish the
existence of a medically determinable impairment, a demonstration
requiring evidence from acceptable medical sources; however,
information from such other sources may be based on special
knowledge of the claimant and may provide insight into the
severity of impairments and how they affect the person's ability
to function. Soc. Sec. Ruling 06-03p pp. 2-3; Dodrill v. Shalala,
12 F.3d 915, 918-19 (9th Cir. 1993).

With respect to evaluating evidence from other non-medical
sources such as spouses, parents, friends, and neighbors who have
not seen the claimant in a professional capacity in connection
with the impairments, the weight to which such evidence is
entitled will vary according to the particular facts of the case;
it is appropriate to consider factors such as the nature and
extent of the relationship with the claimant, whether the
evidence is consistent with other evidence, and any other factors
that tend to support or refute the evidence. Soc. Sec. Ruling 06-
03p p. 6. The adjudicator should generally explain the weight
given the opinions from such other sources or otherwise ensure

1 that the discussion of the evidence in the determination or

2 decision allows a claimant or subsequent reviewer to follow the

3 adjudicator's reasoning when such opinions may have an effect on

4 the outcome of the case. Id. An ALJ cannot discount testimony

5 from lay witnesses without articulating specific reasons for

6 doing so. Id. at 919.

7　　Here, the ALJ expressly stated that he found that the

8 testimony of Plaintiff's mother was biased and inconsistent with

9 the medical evidence of record; the objective evidence and other

10 doctor comments were not consistent with total disability. (A.R.

11 18.) Bias is clearly a relevant factor with respect to evaluating

12 a lay witness's testimony. Further, it is appropriate for an ALJ

13 to rely on medical evidence in rejecting inconsistent testimony.

14 Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001) (noting the

15 propriety of rejecting family members' testimony in part because

16 of inconsistency with medical history generally alluded to in the

17 decision); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

18 2002). Here, the ALJ referred to evidence in the form of

19 documented medical history that was specific, legitimate, and

20 even clear and convincing in force. Substantial evidence

21 supported the ALJ's conclusions.

22　　VI. Consideration of Medical Sources' Opinions

23　　Plaintiff argues that the ALJ's treatment of the opinions of

24 several medical sources was inadequate.

25　　The governing standards for evaluating and articulating

26 findings concerning expert opinions have recently been

27 summarized:

28　　　　The opinions of treating doctors should be given

more weight than the opinions of doctors who do not treat the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 830, quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes [v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).

> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at 830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Further, with respect to the opinions of non-treating physicians, the regulatory standards have likewise been summarized:

By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical

opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to proceedings under Title XVI, the Court notes that an identical regulation has been promulgated. See, 20 C.F.R. § 416.927.

A. Dr. Shaw

Plaintiff argues that the ALJ obviously rejected Dr. Shaw's report but failed to give reasons for not adopting it.

The ALJ adverted to Dr. Shaw's examination and conclusions, including the finding of cumulative trauma from an industrial perspective relating to her neck, left shoulder, low back, and left hip and knee, and the findings that she had developed industrial fibromyalgia syndrome as a result of her orthopedic injuries and had Hepatitis C. (A.R. 17.) He further noted that Dr. Shaw felt that Plaintiff was precluded from her past relevant work as a teacher's aide. (Id.)

Except with respect to the issue of fibromyalgia, which is treated separately below, the Court rejects Plaintiff's contention because to the extent that Dr. Shaw rendered a medical opinion[7], the ALJ's treatment of it was adequate. A summary of Dr.

---

[7] A "medical opinion" is a statement from an acceptable medical source that reflects a judgment about the nature and severity of a claimant's impairments, including the severity of the impairment, its symptoms, a diagnosis and prognosis, a statement of what the claimant can still do despite his or her impairments, and any physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

1  Shaw's findings has previously been set forth. The only
2  limitations expressed by Dr. Shaw were that Plaintiff was
3  temporarily totally disabled by industrially related fibromyalgia
4  such that she would require six to twelve months of treatment
5  before she could be permanent and stationary (and thus a
6  qualified injured worker, apparently with respect to California's
7  worker's compensation system) (A.R. 260, 261, 242); and, he noted
8  that it was "quite probable that she will not be able to return
9  to her prior occupational activities as described" (A.R. 261).
10 Her prior employment had involved chronic lifting and carrying of
11 accessories, and chronic walking and stair climbing. (A.R. 261,
12 242-245, 257.)

13     As Defendant notes, and as has been detailed hereinabove,
14 the ALJ set forth in detail his analysis of the medical evidence
15 and his conclusion that it was inconsistent with total
16 disability. The ALJ expressly stated that he adopted the opinions
17 of the state agency medical consultants, and he discussed the
18 other opinions supporting his decision. (A.R. 17-19.) The ALJ
19 also expressly concluded that the objective medical evidence was
20 not consistent with total disability. (A.R. 18-19.) Dr. Shaw's
21 own findings were mild (essentially normal findings with only
22 positive straight leg raising on the left at sixty degrees,
23 tender spots, mild degenerative changes of the neck, back and hip
24 with slight narrowing of the AC joint on the left shoulder,
25 possible patellar tracking problem reflected in x-rays, and only
26 slightly abnormal liver function tests). (A.R. 247-51, 258.)

27     The Court concludes that the ALJ stated specific, legitimate
28 reasons why the doctor's opinion on the ultimate issue of

23

1  disability was rejected. The Court notes that the ALJ was not
2  bound by such an opinion. A determination of whether or not a
3  claimant meets the statutory definition of disability is a legal
4  conclusion reserved to the Commissioner; the opinion of a medical
5  source on the ultimate issue of disability is not conclusive.
6  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

7      Further, with respect to Dr. Shaw's opinion that Plaintiff
8  could not perform her past relevant work as a teacher's aide, the
9  ALJ also made a finding, consistent with Dr. Shaw's conclusion,
10  that Plaintiff was precluded from performing her past relevant
11  work. (A.R. 19.)

12      Accordingly, the Court concludes that to the extent that Dr.
13  Shaw rendered an opinion as to Plaintiff's functionality, the ALJ
14  adequately detailed the evidence and the ALJ's evaluation of the
15  evidence such that specific, legitimate reasons were stated for
16  his treatment of Dr. Shaw's opinion.

17          B. Dr. Lessenger

18      Plaintiff argues that the ALJ erroneously refused to state
19  reasons for the rejection of the opinion of consulting examiner
20  Dr. Lessenger, who concluded that Plaintiff was unlikely to
21  function in a work situation with demands made upon her, would
22  not do well interacting with others given her irritability and
23  negative attitude towards others, and was limited in her ability
24  to deal with danger in the work place due to emotional
25  instability.

26      The ALJ expressly concluded with respect to Plaintiff's
27  mental impairment that Plaintiff was never hospitalized for
28  mental reasons, was receiving individual counseling, and was

being treated with psychotropic medication. (A.R. 19.)
Substantial evidence supports this characterization of the
essentially conservative treatment that Plaintiff was receiving
and the essentially mild progress of Plaintiff's symptoms from
the mental impairment.

    The ALJ expressly addressed the findings and opinion of Dr.
Lessenger, concluding that Lessenger's exam showed low average
intellectual ability and memory functions except for poor
immediate memory. (A.R. 17.) He recited Plaintiff's labile
affect, anger, and irritability over the exam. (A.R. 17.) The ALJ
addressed what is reasonably interpreted as some ambiguity in the
opinion of Dr. Lessenger. The doctor had noted Plaintiff's
selective irritation and anger (Plaintiff was angry and irritable
with the examiner, but polite and pleasant with the people whom
she called for a ride home), and the doctor had opined that much
of the irritability appeared to have been due to feelings of
failure in the evaluation. (A.R. 324.) The doctor had also noted
that Plaintiff was focused on her own emotions and physical
condition. This opinion was reasonably interpreted by the ALJ to
mean that Plaintiff had, in addition to a major depressive
disorder and personality disorder, an attitude which was to some
extent within Plaintiff's control. Dr. Lessenger expressly stated
that Plaintiff's ability to understand, carry out, and remember
simple instructions was limited "only by her attitude." Again, it
was opined that Plaintiff "would not do well" with respect to
responding appropriately to others because of "her irritability
and negative attitude toward others."

    Further, the extent of any dysfunction was not clearly

25

stated. The doctor stated that Plaintiff was "unlikely to function" in a work situation where there were demands; she "would not do well" interacting with others given her attitude, and her ability to deal with changes in a routine work setting were "[l]imited" due to emotional instability.

To the extent that evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Because the ALJ has authority to interpret ambiguous medical opinions, Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993), the Court must defer to the ALJ's decision. The ALJ here operated within the permissible bounds of his discretion in interpreting Dr. Lessenger's indefinite and uncertain limitations. Having done so, the ALJ then proceeded to rely on the opinion to the extent that it indicated that although Plaintiff had some limitations, with respect to the performance of simple, repetitive tasks, it was within Plaintiff's ability to do so. The ALJ limited Plaintiff's work to simple, repetitive tasks with only occasional contact with the general public. (A.R. 19.)

The ALJ expressly credited the opinions of the state agency consultants who found that Plaintiff could perform simple, repetitive light work with limited public contact. (A.R. 18.) The ALJ expressly addressed the mental rating of impairment severity (the "B" criteria) and concluded that Plaintiff had mild restriction of daily living activities, moderate difficulties in maintaining social functioning, maintaining concentration persistence, or pace, and one or two episodes of decompensation,

1  each of extended duration. (A.R. 19.) He expressly concluded that
2  Plaintiff's testimony was not credible, and the credible medical
3  evidence did not show an underlying medical condition so severe
4  as to be productive of symptoms which would preclude simple,
5  repetitive light work activity. (A.R. 19.)

6      The Court acknowledges that Soc. Sec. Ruling 96-5p states
7  that when there is a medical source statement as to a claimant's
8  RFC, adjudicators must weigh medical source statements under the
9  rules set out in 20 C.F.R. §§ 404.1527 and 416.927 by stating
10 appropriate explanations for accepting or rejecting such
11 opinions. Here, with respect to Dr. Lessenger's opinion, the ALJ
12 reasonably interpreted the opinion and made corresponding
13 provisions in the RFC. It is clear from reading the totality of
14 the ALJ's decision that he determined that the credible,
15 objective medical evidence (Drs. Murillo, Ikawa, Morganthaler,
16 Land) was consistent with the RFC assigned to Plaintiff, and that
17 he reasonably interpreted Dr. Lessenger's opinion as not being
18 inconsistent with such an RFC.

19      Where evidence is susceptible to more than one rational
20 interpretation, it is the ALJ's conclusion that must be upheld.
21 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Here,
22 substantial evidence supported the ALJ's interpretation and
23 weighing of the evidence, and the reasons for the ALJ's decision
24 are sufficiently clear from the decision to permit meaningful
25 review.

26          C. Dr. Young

27      It is unclear whether the ALJ actually rejected the opinion
28 of Dr. Young, who opined that Plaintiff could perform desk type

27

1  duties with a limitation on lifting, sitting more than six hours
2  daily, and prolonged standing or walking. (A.R. 17, 331.) The
3  ALJ's RFC was light work, with sitting, standing, or walking no
4  more than six hours during an eight-hour workday. (A.R. 18.)

5      However, in noting the limitations placed by Dr. Young, the
6  ALJ stated that the findings were mild. (A.R. 17.) To the extent
7  that the opinion of Dr. Young was ambiguous because Dr. Young did
8  not make his opinion regarding the precise length of standing or
9  walking any more specific than it was ("no prolonged standing or
10 any prolonged walking") (A.R. 331), the ALJ was entitled to
11 interpret the evidence reasonably, and he reasonably interpreted
12 it as consistent with his RFC. To the extent that it was
13 inconsistent, the ALJ stated specific reasons (mild findings)
14 sufficient to reject any limitation. It is established that the
15 opinion of a treating physician may be rejected if it is
16 ambiguous and inconsistent or conclusionary in form and not
17 supported by clinical findings. Matney v. Sullivan, 981 F.2d
18 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747,
19 751.

20      VII. Hypothetical Question to the Vocational Expert

21      Plaintiff argues that the hypothetical question propounded
22 to the vocational expert (VE) was incomplete because it did not
23 include all necessary limitations, and thus it could not serve as
24 substantial evidence to support the ALJ's decision. Plaintiff
25 argues that at step five, the vocational testimony was inadequate
26 to support the finding that given her RFC and vocational factors,
27 Plaintiff could perform jobs other than her past relevant work
28 that existed in significant numbers in the national economy. See,

20 C.F.R. §§ 1560, 416.960; Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (setting forth in detail the five steps of analysis of disability).

The Commissioner may carry its burden of showing ability to do other work by eliciting the testimony of a vocational expert (VE) in response to a hypothetical that sets out all the limitations and restrictions of the claimant that are supported by the record. Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995). A hypothetical question posed to a vocational expert (VE) must be based on medical assumptions supported by substantial evidence that reflects all the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d at 184)). An ALJ may accept or reject restrictions in a hypothetical question that are not supported by substantial evidence. Osenbrock, 240 F.3d 1157, 1164-65. Reliance on a hypothetical that fails to include all accepted limitations is insufficient to carry the agency's burden of proving ability to engage in alternative work. Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995) (remanding case to the agency to determine vocational ability based on a hypothetical that accurately reflected mental RFC, including moderate limitations in ability to understand, remember, and carry out detailed instructions, as well as work with others without distraction, respond appropriately to work changes, and set goals or plans independently of others). Although a hypothetical should include subjective complaints, it need not include complaints which were rejected with a statement of reasons supported in the record. Light v. Social Security Administration, 119 F.3d 789, 793 (9th

1  Cir. 1997).

2      The ALJ found that Plaintiff could lift and carry twenty
3  pounds occasionally and ten frequently; stand, walk, or sit six
4  hours each in an eight-hour day; maintain attention,
5  concentration, persistence, and pace; relate to and interact with
6  others; adapt to usual changes in work settings; and adhere to
7  safety rules; however, she was restricted to simple, repetitive
8  tasks and only occasional contact with the general public. (A.R.
9  21.) The ALJ posed a hypothetical to the VE which included each
10  of these limitations. (A.R. 490.) The VE responded that such an
11  individual could not perform Plaintiff's past relevant work but
12  could perform simple jobs, including hand packaging at the
13  simple, light level with over 30,000 positions; telephone
14  directory distributor with over 10,000 positions; and production
15  worker with over 33,000 positions. (A.R. 490-91.)

16      Plaintiff argues that it was improper for the ALJ to include
17  in the hypothetical an ability to maintain attention,
18  concentration, persistence and pace and ability to relate to and
19  interact with others. Plaintiff contends that this is so because
20  the ALJ also found that Plaintiff had moderate difficulties in
21  maintaining social functioning and concentration, persistence or
22  pace, and further had one or two episodes of decompensation, each
23  of extended duration. Plaintiff asserts that the two sets of
24  findings are inconsistent, and thus the hypothetical was
25  inadequate and invalid.

26      The ALJ did make the findings (A.R. 19); however, he
27  expressly stated that they were made "[i]n terms of the mental
28  rating of impairment severity ("B" criteria); further, after

making these findings, he stated:

> The credible medical evidence therefore does not show an underlying medical condition so severe as to be productive of symptoms which would preclude simple, repetitive light work activity, and the claimant's testimony is not found credible in supporting work activity limitations to the extent contended.

(A.R. 19.)

Regulations provide that a psychiatric review technique is used by adjudicators to assess an individual's limitations and restrictions from a mental impairment in categories identified in "paragraph B" and "paragraph C" criteria of adult mental disorders listings. 20 C.F.R. §§ 404.1520a, 416.920a. However, the criteria identified in "paragraph B" and "paragraph C" are not used at steps 4 and 5 of the sequential analysis relating to RFC, but rather are used to rate the severity of mental impairments at the earlier analytical steps 2 and 3. 20 C.F.R. §§ 404.1520a, 416.920a; Soc. Sec. Ruling 96-8p p. 4.

Here, the ALJ used the technique and concluded that Plaintiff had a severe mental impairment of depressive disorder. (A.R. 15, 19.) At the RFC steps, the ALJ considered the pertinent opinions and assigned limitations in the RFC that corresponded to the opinions, such as the limit to simple repetitive tasks and only occasional contact with the public. As previously noted, the ALJ's decision adequately reflected the reasoning process through which the ALJ weighed the medical opinions, and substantial evidence supported the decision, including the opinions of the state agency physicians Drs. Murillo and Ikawa, which in turn were based on the opinions of the examining psychologist and psychiatrist, Drs. Morganthaler and Land. It is established that

1  the opinion of an examining physician based on adequate findings
2  may amount to substantial evidence. Tonapetyan v. Halter, 242
3  F.3d 1144, 1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821,
4  830 (9th Cir. 1995). Likewise, the opinion of a nontreating,
5  nonexamining physician can amount to substantial evidence as long
6  as it is supported by other evidence in the record, such as the
7  opinions of other examining and consulting physicians, which are
8  in turn based on independent clinical findings. Andrews v.
9  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the findings
10 were supported by substantial evidence.

11     As previously analyzed, the ALJ rejected Plaintiff's
12 subjective complaints for clear and convincing reasons supported
13 by substantial evidence in the record. Thus, the question did not
14 have to include Plaintiff's subjective complaints.

15     Accordingly, the Court concludes that the hypothetical
16 question propounded to the VE was adequate, and the testimony
17 provided by the VE constituted substantial evidence supporting
18 the ALJ's findings.

19     VIII. Fibromyalgia

20     Plaintiff argues that the ALJ erroneously failed to find
21 that Plaintiff's fibromyalgia was a severe impairment. Defendant
22 counters that at a later step the ALJ considered all the opinions
23 concerning Plaintiff's fibromyalgia and the functional
24 limitations, if any, resulting therefrom; thus, even though he
25 did not find that fibromyalgia was a severe impairment, he
26 included the impairment's effects throughout the analysis. Thus,
27 the failure to find severity was immaterial.

28     At step two, the Secretary considers if claimant has "an

32

impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). This is referred to as the "severity" requirement and does not involve consideration of the claimant's age, education, or work experience. Id. The step-two inquiry is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

An impairment or combination thereof is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a); Soc. Sec. Ruling 85-28; Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

Here, although the ALJ did not find Plaintiff's fibromyalgia

1  to be a severe impairment, the ALJ considered the allegation that

2  Plaintiff was disabled by fibromyalgia (A.R. 15) and Plaintiff's

3  claim of subjective symptoms that Plaintiff associated with

4  fibromyalgia (A.R. 18). Further, the ALJ considered all symptoms

5  and the expert opinions concerning Plaintiff's fibromyalgia in

6  connection with Plaintiff's RFC, including Dr. Young's and Dr.

7  Shaw's. (A.R. 17, 19). The ALJ noted Dr. Young's diagnosis of

8  possible fibromyalgia and Dr. Shaw's diagnosis of industrial

9  fibromyalgia syndrome. (A.R. 17.) The ALJ relied on the mildness

10 of Dr. Young's findings, but he appeared to incorporate some of

11 the limitations of duty, lifting, and sitting, standing and

12 walking. Further, the ALJ noted Dr. Shaw's diagnosis, and the ALJ

13 concluded, consistent with the recommendation of Dr. Shaw, that

14 Plaintiff was unable to perform her past relevant work.

15 　　　An ALJ's failure to find an impairment severe, even if

16 erroneous, is harmless error where at the later RFC stage of the

17 analysis, the ALJ discusses the impairment, the medical findings,

18 the pertinent symptoms, and the applicable opinions concerning

19 functional limitations. Lewis v. Astrue, 498 F.3d 909, 911 (9th

20 Cir. 2007). In the present case, considering all the

21 circumstances, it is concluded that even if it was error not to

22 find that Plaintiff had a severe impairment of fibromyalgia, any

23 error was harmless.

24 　　　IX. Disposition

25 　　　Based on the foregoing, the Court concludes that the ALJ's

26 decision was supported by substantial evidence in the record as a

27 whole and was based on proper legal standards.

28 　　　Accordingly, the Court AFFIRMS the administrative decision

1  of the Defendant Commissioner of Social Security and DENIES

2  Plaintiff's Social Security complaint.

3      The Clerk of the Court IS DIRECTED to enter judgment for

4  Defendant Michael J. Astrue, Commissioner of Social Security,

5  and against Plaintiff Linda Tylor.

6  IT IS SO ORDERED.

7  **Dated:    January 24, 2008                    /s/ Sandra M. Snyder                **
                              UNITED STATES MAGISTRATE JUDGE